**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IRIS HILLEL, | : |
| | : |
| Plaintiff, | : |
| | : |
| - against - | : |
| | : |
| OBVIO HEALTH USA, INC., OBVIO HEALTH | : |
| PTE. LTD., SPRIM AMERICAS, INC., IQVIA, | : |
| INC., MICHAEL SHLEIFER, IVAN JARRY, | : |
| PRASANNA PITALE, ALISTAIR GRENFELL, | : |
| DIKLA SHPANGENTAL, and ANAND | : |
| THARMARATNAM, in their individual and | : |
| professional capacities, | : |
| | : |
| Defendants. | : |

No. 1:20-cv-04647-LAP (DCF)

**MEMORANDUM IN SUPPORT OF DEFENDANT IQVIA INC.'S MOTION TO
DISMISS AND TO STRIKE PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 12(f)**

PILLSBURY WINTHROP SHAW PITTMAN LLP
Kenneth W. Taber, Esq.
Maria T. Galeno, Esq.
31 West 52nd Street
New York, New York 10019
Tel.: 212-858-1000
kenneth.taber@pillsburylaw.com
maria.galeno@pillsburylaw.com

August 31, 2020

## <u>TABLE OF CONTENTS</u>

Page

I.   PRELIMINARY STATEMENT ........................................................................... 1

II.   FACTUAL ALLEGATIONS ............................................................................. 3

III.   THE LEGAL STANDARD ............................................................................... 6

IV.   ARGUMENT .................................................................................................... 7

    A.   Plaintiff's Defamation Claims (Counts Eight and Nine) Fail as a Matter of Law ........ 7

        1.   The Defamation and Defamation Per Se Claims (Counts Eight and Nine) Should Both be Dismissed Because Plaintiff's Allegations of Malice are Insufficient to Overcome IQVIA's Common Interest Privilege .................................................. 8

        2.   No Defamation Claim Can Arise from Expressions of Negative Personal Opinion ........................................................................................................ 12

        3.   The Defamation Claim Based on Special Harm (Count Eight) Should Be Dismissed for Failure to Satisfy New York Law .............................................. 15

    B.   Plaintiff's Tortious Interference with Prospective Economic Relations Claim (Count Ten) Fails Because Plaintiff Has Not Adequately Pled that IQVIA Acted Solely Out of Malice or Used Wrongful Means .......................................................................... 16

V.   BECAUSE PLAINTIFF ALREADY HAD TWO OPPORTUNITIES TO PROPERLY PLEAD HER CLAIMS, IQVIA'S MOTION TO DISMISS SHOULD BE GRANTED WITHOUT LEAVE TO REPLEAD ................................................................... 18

VI.   THIS COURT SHOULD STRIKE UNNECESSARY AND INFLAMMATORY ALLEGATIONS FROM THE AMENDED COMPLAINT ........................................... 18

VII.   CONCLUSION ............................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

*Matter of Abbitt v. Carrube*,
   159 A.D.3d 408 (1st Dep't 2018) ...........................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................6, 7

*Belly Basics, Inc. v. Mothers Work, Inc.*,
   95 F. Supp. 2d 144 (S.D.N.Y. 2000)...................................................................14

*Biro v. Conde Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) ..............6

*Bray v. Purple Eagle Entm't, Inc.*,
   No. 18 Civ. 5205 (GBD)(HBP), 2019 WL 1549044 (S.D.N.Y. Jan. 18, 2019) .....19

*Carvel Corp. v. Noonan*,
   3 N.Y.3d 182 (2004) ...........................................................................................16

*Colantonio v. Mercy Med. Ctr.*,
   73 A.D.3d 966 (2d Dep't 2010) ...........................................................................14

*Coleman v. brokersXpress, LLC*,
   375 F. App'x 136 (2d Cir. 2010) ..........................................................................18

*Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*,
   No. 02 Civ. 9567 (KNF), 2003 WL 22410623 (S.D.N.Y. Oct. 21, 2003).............17

*Dellefave v. Access Temporaries, Inc.*,
   No. 99 CIV. 6098 RWS., 2001 WL 25745 (S.D.N.Y. Jan. 10, 2001) ...................16

*Donahue v. Asia TV USA Ltd.*,
   208 F. Supp. 3d 505 (S.D.N.Y. 2016)..................................................................19

*Falk v. Anesthesia Assocs. of Jamaica*,
   228 A.D.2d 326 (1st Dep't 1996) .........................................................................16

*Ferguson v. Sherman Square Realty Corp.*,
   30 A.D.3d 288 (1st Dep't 2006) ............................................................................9

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
   669 F. Supp. 2d 405 (S.D.N.Y. 2009)....................................................................9

*Higgins v. Pascack Valley Hosp.*,
    158 N.J. 404 (1999) ............................................................................................14

*Hosain-Bhuiyan v. Barr Labs., Inc.*,
    No. 17 CV 114 (VB), 2017 WL 4122621 (S.D.N.Y. Sept. 14, 2017) ..................8, 12

*Huntemann v. City of Yonkers*,
    No. 95 Civ. 1276 (LAP), 1997 WL 527880 (S.D.N.Y. Aug. 25, 1997) ........................8, 9, 17

*Kalimantano GmbH v. Motion in Time, Inc.*,
    939 F. Supp. 2d 392 (S.D.N.Y. 2013)......................................................................15

*Linell v. New York City Dep't of Educ.*,
    No. 15-CV-5085 (CBA) (MDG), 2017 WL 880853 (March 3, 2017) ....................8, 9, 11, 12

*Medcalf v. Walsh*,
    938 F. Supp. 2d 478 (S.D.N.Y. 2013)................................................................6, 7, 14, 15, 16

*Munoz-Feliciano v. Monroe-Woodbury Cent. Sch. Dist.*,
    No. 13-CV-4340 CS, 2015 WL 1379702 (S.D.N.Y. Mar. 25, 2015), *aff'd*, 637
    F. App'x 16 (2d Cir. 2016) ........................................................................................18

*Parker v. Citizen's Bank, N.A.*,
    No. 19-CV-1454 (VEC), 2019 WL 5569680 (S.D.N.Y. Oct. 29, 2019) ..................18

*Smith v. AVSC Int'l, Inc.*,
    148 F.Supp.2d 302 (S.D.N.Y. 2001)........................................................................19

*Tasso v. Platinum Guild Int'l*,
    No. 94 CIV. 8288 (LAP), 1998 WL 841489 (S.D.N.Y. Dec. 1998) ..............8, 9, 13

*Vasarhelyi v. New Sch. for Soc. Research*,
    230 A.D.2d 658 (1st Dep't 1996) ............................................................................16

*Vinas v. Chubb Corp.*,
    499 F. Supp. 2d 427 (S.D.N.Y. 2007)..........................................................12, 14, 16, 17

## Rules and Regulations

Federal Rules of Civil Procedure
    Rule 12(b)(6)..............................................................................................................1, 6
    Rule 12(f) ..................................................................................................................1, 19

## Other Authorities

Melissa Fassbender, *Quintiles, IMS merger completed*, October 2, 2016,
    https://www.outsourcing-pharma.com/Article/2016/10/03/Quintiles-IMS-
    Health-merger-completed ............................................................................................1

Natalie Grover, *Quintiles, IMS Health to merge in $9 billion deal*, May 3, 2016,
       https://www.reuters.com/article/us-ims-hlth-hldg-m-a-
       quintilesidUSKCN0XU0VO#:~:text=(Reuters)%20%2D%20Contract%20me
       dical%20research,deal%20worth%20about%20%249%20billion ...........................................1

Defendant IQVIA Inc.[1] ("Defendant" or "IQVIA") respectfully submits this Memorandum in Support of its Motion to Dismiss the Amended Complaint for failure to state a claim upon which relief can be granted, and its Motion to Strike certain scurrilous and extraneous allegations, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f).

## I.     PRELIMINARY STATEMENT

Plaintiff has now **twice** failed to allege sufficiently, and with the requisite specificity, her three claims against IQVIA—for defamation (Count Eight), defamation per se (Count Nine), and tortious interference with prospective economic relations (Count Ten). Plaintiff's Amended Complaint, served July 30, 2020, in response to IQVIA's initial July 8, 2020 motion to dismiss, still falls far short of the applicable pleading requirements.

Plaintiff's three claims against IQVIA still arise solely from statements allegedly made about Plaintiff, a former IQVIA employee,[2] in the context of IQVIA's multi-million dollar investment in Plaintiff's then-current employer, Obvio Health USA, Inc. and Obvio Health Pte. Ltd. (collectively, "Obvio"). Plaintiff admits she heard none of those three statements herself. She alleges instead that IQVIA personnel told others at Obvio that: (i) Plaintiff had been fired by

---

[1]  Prasanna Pitale, Alistair Grenfell, Dikla Shpangental, and Anand Tharmaratnam (collectively, the "Individual Defamation Defendants") have contemporaneously filed a Motion to Dismiss the Amended Complaint for lack of personal jurisdiction. Should this Court nonetheless decide to exercise personal jurisdiction over the Individual Defamation Defendants, they join in this Motion to Dismiss.

[2]  Plaintiff alleges that she was employed by IMS Holdings Inc. ("IMS") from 2004-2009, Amended Complaint ¶¶ 24-25, which merged with Quintiles Transnational Holdings Inc. ("Quintiles") in 2016, and then changed its name to IQVIA, *see* Natalie Grover, *Quintiles, IMS Health to merge in $9 billion deal*, May 3, 2016 https://www.reuters.com/article/us-ims-hlth-hldg-m-a quintilesidUSKCN0XU0VO#:~:text=(Reuters)%20%2D%20Contract%20medical%20researc h,deal%20worth%20about%20%249%20billion; Melissa Fassbender, *Quintiles, IMS merger completed*, October 2, 2016 https://www.outsourcing-pharma.com/Article/2016/10/03/Quintiles-IMS-Health-merger-completed.

IQVIA; (ii) IQVIA personnel preferred not to work with Plaintiff on the deal; and (iii) IQVIA personnel did not want to attend meetings with Plaintiff.   Assuming, for purposes of this motion only, that the three oral statements were all made – something that will be vigorously contested – none of them is actionable here.   First, Plaintiff's defamation and defamation per se claims (Counts Eight and Nine, respectively) fail as a matter of law because all three alleged statements each remain subject to IQVIA's common interest privilege with Obvio, and Plaintiff has now twice failed to allege facts sufficient to overcome that privilege.   Simply put, IQVIA's substantial investment of millions of dollars in Obvio permitted IQVIA employees to candidly discuss the team, including Plaintiff, that would execute the IQVIA-Obvio deal.

To overcome that common interest privilege, Plaintiff had to sufficiently allege *facts* demonstrating that IQVIA acted here with malice; conclusory allegations of malice are plainly insufficient.   Yet, the only "facts" Plaintiff now alleges are either irrelevant to her claims, purely speculative, or entirely implausible.   Moreover, Plaintiff still fails to allege facts demonstrating that the speakers of the three alleged statements either knew that their statements were false or had serious doubts as to their veracity.

Second, two of the three challenged statements (the second and third alleged statements) are also expressions of negative personal opinion, and therefore protected by law.   Because neither such statement implies the existence of undisclosed negative facts, as a matter of law, they are not actionable.

Third, Plaintiff's defamation claim based upon special harm (Count Eight) still fails to adequately plead "special damages."   New York law prohibits at-will employees like Plaintiff from relying upon lost income to plead such "special damages."   Yet, as in her original Complaint, Plaintiff does just that. That defect alone warrants dismissal of Count Eight.

Fourth, Plaintiff's tortious interference with prospective economic relations claim (Count Ten) cannot survive because Plaintiff does not sufficiently plead that IQVIA used "wrongful means" or acted "solely out of malice." Indeed, once Plaintiff's underlying defamation claims are dismissed, she will not have sufficiently pled any such "wrongful means" at all. Additionally, given IQVIA's substantial financial interest in Obvio, any allegation that IQVIA acted "solely out of malice" is doomed.

Accordingly, IQVIA's motion to dismiss the three counts alleged against it (Counts Eight, Nine, and Ten) in Plaintiff's Amended Complaint should be granted. Moreover, because this is now Plaintiff's second failed attempt to plead her claims, leave to replead should be denied.

Finally, Plaintiff includes in her Amended Complaint scurrilous allegations about IQVIA unrelated to her claims. Those allegations should be stricken if this action proceeds as against IQVIA.

## II.   FACTUAL ALLEGATIONS

Plaintiff alleges that, from 2004-2012, she worked for two IQVIA predecessor entities, IMS and then Quintiles. Am. Compl. ¶¶ 24, 25, 102. As Plaintiff correctly notes, after she left Quintiles, IMS and Quintiles merged, with the combined organization ultimately renamed IQVIA. *Id.* at ¶ 26.

Seven years later, in August 2019, Plaintiff was hired by Obvio and SPRIM Americas, Inc. ("SPRIM"). *Id.* at ¶ 30. At that time, she explains, Obvio and IQVIA were "in the process of negotiating a large deal" to give IQVIA a significant financial interest in Obvio. *Id.* at ¶ 104. According to Plaintiff, she "began working on the deal immediately," and was "heavily

involved" in this "significant collaboration," *Id.* at ¶¶ 105, 139, "work[ing] closely" with IQVIA to secure IQVIA's investment of millions of dollars on Obvio's behalf. *Id.* at ¶¶ 32, 105.

In her Amended Complaint, Plaintiff continues to base her claims against IQVIA on three alleged oral statements, none of which she personally heard. First, she alleges that Michael Shleifer, the Co-Founder and Managing Partner of SPRIM, and Laurent Benissan, another SPRIM Managing Partner, told her, one week after she joined Obvio in August 2019, that Anand Tharmaratnam, IQVIA's then President of Asia Pacific, told them she "had been fired from IMS." *Id.* at ¶¶ 13, 18, 106.

Second, she alleges that, on December 20, 2019, Ivan Jarry, SPRIM's Co-Founder and Managing Partner, as well as Obvio's CEO, called her and told her that Prasanna Pitale, IQVIA's Senior Vice President of Global Consumer Health, had informed him of "two additional defamatory and tortious statements." *Id.* at ¶¶ 15, 38, 114. First, Plaintiff alleges that Alistair Grenfell, IQVIA's President for Europe, the Middle East, Africa and South Asia, told Mr. Pitale, who then told Mr. Jarry, who then told Plaintiff, that Mr. Grenfell "did not want [Plaintiff] to work with IQVIA in Europe." *Id.* at ¶¶ 16, 115. Second, Plaintiff alleges that Dikla Shpangental, IQVIA's Vice President for Israel, allegedly told Mr. Pitale, who then told Mr. Jarry, who then told Plaintiff, that Ms. Shpangental "would not attend any meetings with ObvioHealth if [Plaintiff] was going to be present." *Id.* at ¶¶ 17, 116.

In support of her defamation claims based on these three alleged statements (Counts Eight and Nine), Plaintiff continues to conclusorily allege that IQVIA acted with malice. *Id.* at ¶¶ 210-211, 216, 220, 221, 226. She then untenably alleges there was no conceivable "business" reason for the alleged statements, *id.* at ¶¶ 110-111, 121, 124, 137, ignoring her own contrary allegations about IQVIA investing millions in a joint collaboration with Obvio.

4

In an attempt to circumvent the common interest privilege arising from that collaboration, Plaintiff then alleges that the three statements were designed to undermine Obvio's own permitted efforts to continue competing with IQVIA during an initial six-month transition period.  That period began after the parties executed their Commercial Agreement on February 20, 2020.  *Id.* at ¶¶ 129 – 132, 134, 136.  But that transitional competition hardly undermines the common interest between IQVIA and Obvio.  Moreover, the three statements were made in August and December 2019, long before that transitional competition period even began.

Next, in an attempt to demonstrate the malice required to overcome IQVIA's common interest privilege, Plaintiff alleges that Mr. Tharmaratnam (who allegedly stated that Plaintiff was fired from IMS) "would have" known his alleged statement was false because he (i) had been employed by "IMS/Quintiles/IQVIA for 23 years", and (ii) was a "senior level employee." *Id.* at ¶ 108.  But, that's all Plaintiff offers to establish malice, nowhere explaining how either that longevity or seniority equates to actual knowledge of the facts of her departure (from a position in Israel, halfway around the world).  More significantly, Plaintiff nowhere alleges Mr. Tharmaratnam knew the circumstances of her departure, and maliciously lied about them.

Plaintiff next alleges that Mr. Grenfell and Ms. Shpangental both knew about her actual job performance at IMS and Quintiles.  *Id*. at ¶¶ 120, 123.  But, again, she offers nothing to convert that alleged knowledge into malice supposedly motivating the alleged statements about their personal preferences not to work with her.

In support of her defamation claim based upon special harm (Count Eight), Plaintiff continues to rely on her alleged lost income from Obvio.  But, such allegations of special harm are inadequate under New York law.  *Id.* at ¶ 165.

Finally, for her tortious interference claim, Plaintiff continues to rely solely on her

defamation claims.  Citing those defamation claims, but nothing more, she alleges that IQVIA

"intentionally interfered" with her "business relationships with her employers at SPRIM and

ObvioHealth" for "wrongful purposes", *id.* at ¶¶ 228-229, and "acted solely out of malice, and/or

used dishonest, unfair, and improper means to interfere with Plaintiff's business relationships,"

*id.* at ¶ 230.  Therefore, if Plaintiff's defamation claims fail, her tortious interference claim fails

as well.

## III.    THE LEGAL STANDARD

On a Rule 12(b)(6) motion, the Court must accept plaintiff's factual allegations as true,

drawing all reasonable inferences in the plaintiff's favor, but only if the allegations are plausible

on their face, and not merely conclusory. *See Medcalf v. Walsh*, 938 F. Supp. 2d 478, 484

(S.D.N.Y. 2013):

> A pleading that offers ***labels and conclusions or a formulaic recitation of the elements of a cause of action will not do***. Nor does a complaint suffice if it tenders ***naked assertions devoid of further factual enhancement***.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 484-485 (emphasis added) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57, 570

(2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal citations and quotations

omitted).  Thus, "where a plaintiff has not nudged his or her claims across the line from

conceivable to plausible, the complaint must be dismissed."  *Biro v. Conde Nast*, 963 F. Supp. 2d

255, 265 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) (quoting *Twombly*, 550 U.S. at

570) (internal quotations omitted).

In the context of defamation claims, the proper pleading of malice is, by design, a

particularly "onerous" task.  *Id.* at 278 ("where a particular state of mind is a necessary element

of a claim, defendant's pleading of that state of mind must be plausible and supported by factual allegations") (citing *Twombly*, 556 U.S. at 686-87).  And, here, despite two attempts, Plaintiff continues to fall well short of the pleading standard.

## IV.   <u>ARGUMENT</u>

As in her original Complaint, Plaintiff's entire case against IQVIA still rests on three oral statements that Plaintiff did not personally hear:  (i) that Plaintiff was fired from IMS; (ii) that Mr. Grenfell did not want Plaintiff to work with IQVIA in Europe; and (iii) that Ms. Shpangental would not attend meetings if Plaintiff were present.  Am. Compl. ¶¶ 106, 114-116.  The first statement allegedly traveled from Mr. Tharmaratnam to Mr. Shleifer to Plaintiff.  *Id.* at ¶ 106.  The second allegedly traveled from Mr. Grenfell to Mr. Pitale to Mr. Jarry to Plaintiff.  *Id.* at ¶¶ 114-115.  And, the third allegedly traveled from Ms. Shpangental to Mr. Pitale to Mr. Jarry to Plaintiff.  *Id.* at ¶¶ 114, 116.

Even disregarding the fact that this kind of telephone game is rarely the stuff of viable defamation claims, the statements themselves alleged here, even if made, do not give rise to sustainable defamation or tortious interference claims.  That's because Plaintiff has now twice failed to allege the facts necessary to overcome the otherwise applicable privileges and defenses.  Under New York law, "[a]n otherwise defamatory statement can nevertheless be protected by privilege," *Medcalf*, 938 F. Supp. 2d at 485, which can only be overcome by detailed factual allegations establishing that the privilege is inapplicable.

### A.   **Plaintiff's Defamation Claims (Counts Eight and Nine) Fail as a Matter of Law**

Plaintiff's two claims for defamation here — one per se and the other based on special harm — both fail as a matter of law (i) in the face of IQVIA's common interest privilege, (ii) as

protected expressions of negative personal opinion, and (iii) for failure to satisfy the pleading standards for special harm.

> 1.     **The Defamation and Defamation Per Se Claims (Counts Eight and Nine) Should Both be Dismissed Because Plaintiff's Allegations of Malice are Insufficient to Overcome IQVIA's Common Interest Privilege**

Plaintiff's defamation and defamation per se claims both fail as a matter of law because all three of the alleged defamatory statements are protected by the common interest privilege. That "privilege arises from the doctrine holding that a communication made by one person to another upon a subject in which both have an interest is protected by a qualified privilege." *Huntemann v. City of Yonkers*, No. 95 Civ. 1276 (LAP), 1997 WL 527880, at *8 (S.D.N.Y. Aug. 25, 1997) (Preska) (internal citations and quotations omitted).

Here, as Plaintiff admits in her Amended Complaint, her employer Obvio already "was in the process of negotiating a large deal with IQVIA" when Plaintiff joined Obvio.  Am. Compl. ¶ 104.  That "large deal," which Plaintiff herself describes as a "significant collaboration," involved IQVIA investing millions in Obvio.  *Id.* at ¶¶ 32, 139.

The statements alleged here were all made in this context — precisely the type of situation to which the shield of the common interest privilege applies.  *See, e.g., Tasso v. Platinum Guild Int'l*, No. 94 CIV. 8288 (LAP), 1998 WL 841489, at *6 (S.D.N.Y. Dec. 1998) (Preska) (statements protected by common interest privilege where made between parties preparing to make "a serious investment").

The common interest privilege can be overcome only by plausible allegations that the defamatory statements were made with either "common law" or "constitutional" (otherwise known as "actual") malice.  *Hosain-Bhuiyan v. Barr Labs., Inc.*, No. 17 CV 114 (VB), 2017 WL 4122621, at *5 (S.D.N.Y. Sept. 14, 2017).  To meet this "exacting standard," a plaintiff must

allege either that: (i) malice was "***the one and only cause***" for the speaker's statements; or (ii) the speaker made the alleged statements knowing they were false or with a reckless disregard for their truth.  *Id.*; *Huntemann*, 1997 WL 527880, at *8-9 (Preska) (emphasis added).  *See also Linell v. New York City Dep't of Educ.*, No. 15-CV-5085 (CBA) (MDG), 2017 WL 880853, at *2 (March 3, 2017).  Such allegations must be supported by specific factual allegations; "[m]ere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the qualified privilege." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009) (granting motion to dismiss defamation claim where malice was pled in a conclusory fashion unsupported by any factual allegations).[3]

Accordingly, Plaintiff must now plead specific, credible facts to support her generic allegation that IQVIA acted with malice.  Recognizing that significant burden, Plaintiff's first tactic is to implausibly suggest the statements at issue were not made in the context of common interest at all.  In her Amended Complaint, Plaintiff now for the first time alleges there was no "business" reason for the three alleged defamatory statements regarding her.  Am. Compl. ¶¶ 110-111, 121, 124, 137.  That allegation is entirely implausible, however, given Plaintiff's other

---

[3]  *See also Matter of Abbitt v. Carrube*, 159 A.D.3d 408, 410 (1st Dep't 2018) (upholding grant of motion to dismiss a defamation claim where plaintiff's allegations of malice were "conclusory and therefore insufficient to overcome the [common interest] privilege"); *Ferguson v. Sherman Square Realty Corp.*, 30 A.D.3d 288, 288 (1st Dep't 2006) (reversing denial of motion to dismiss defamation claim because "plaintiffs' conclusory allegations of malice" were "insufficient to overcome the moving defendants' qualified common-interest privilege") (internal citations omitted); *Tasso*, 1998 WL 841489, at * 6-7 (Preska) (internal citations omitted) (granting summary judgment on defamation claim because "[t]he bald assertion that 'a jury could reasonably find that Luben acted with actual malice,' without pointing to any evidence from which such an inference could be drawn, is not sufficient. Plaintiff's 'conclusory allegations, or charges based upon surmise, conjecture and suspicion,' do not defeat the qualified privilege defense.") (internal citation omitted); *Huntemann*, 1997 WL 527880, at *9 (Preska) (granting summary judgment on defamation claim because plaintiff could not defeat the qualified privilege where his evidence of malice was solely "[s]uspicion, surmise and accusation").

allegations that she was an important member of the team working on the "large deal" between IQVIA and Obvio, *id.* at ¶¶ at 104-105, 139, a deal she says she began working on "immediately" upon her hire, in which she was "heavily involved," and on which she worked "worked closely" with IQVIA.  *Id.* at ¶¶ at 105, 139.  Given IQVIA's significant financial interest in that "large deal" with Obvio, IQVIA undeniably had a compelling interest in candidly discussing the members of the team – including Plaintiff – and whether or not Plaintiff was a good fit.

Plaintiff next presents a convoluted theory that the alleged defamatory statements cannot be shielded by the common-interest privilege because they were motivated instead by IQVIA's own economic interests and ***against*** Obvio's business interests.  *Id.* at ¶¶ 129 – 139.  Plaintiff alleges the three statements were all part of an effort to thwart Obvio's own ability to compete with IQVIA, during the six-month transition period after execution of their Commercial Agreement.  She then points to a provision in the Agreement permitting Obvio to conclude deals competitive with IQVIA during that six-month transition period if those deals were already in progress.  *Id.* at ¶¶ 129 – 139.

Putting aside Plaintiff's tortured and unsupported reasoning that IQVIA's true objective was to cripple its business partner, Plaintiff cannot simply ignore her own allegations that, even if those transition period deals were "competitive," what IQVIA was in fact acquiring here was a large financial stake in Obvio, and therefore a direct financial interest in Obvio's success.  Plaintiff also has a serious timing problem.  According to Plaintiff, the alleged defamatory statements were made in August and December 2019, but the Commercial Agreement was not executed until February 20, 2020, which only then started the six-month transition period running.  It is simply not plausible that IQVIA's alleged statements, months earlier, were

somehow directed solely toward that single transition period in the agreement, rather than the long-term investment and business partnership between the parties. Accordingly, Plaintiffs' attack on the common interest privilege fails any plausibility test.

With the common interest privilege therefore applicable here, to defeat that privilege, what Plaintiff must credibly allege is that IQVIA acted with malice. For common law malice, Plaintiff must allege that such malice was the ***one and only*** cause for the alleged statements. But Plaintiff's own allegations here prove otherwise, describing a "large deal" between IQVIA and Obvio, with IQVIA investing millions in the Obvio team. *Id.* at ¶¶ 32, 104. The alleged defamatory statements were thus made between business partners engaged in a multi-million dollar collaboration, about a self-described critical member of the team. *Id.* at ¶¶ 32, 105, 139. Plaintiff's own allegations thus demonstrate malice was not the ***one and only*** cause for the alleged statements, fatally undermining her claim of common law malice.

As for actual malice, Plaintiff must allege facts to show that the statements were made with knowledge of their falsity or a reckless disregard for their truth. *Linell*, 2017 WL 880853, at *2. Regarding the alleged statement of Mr. Tharmaratnam that Plaintiff was fired from IMS, all Plaintiff now adds are allegations that Mr. Tharmaratnam worked at IQVIA for 23 years at a senior level. Am. Compl. ¶ 108. She then speculates that he, therefore, "would have direct knowledge that his statement was false." *Id.*

But this is at best a non-sequitur. Plaintiff does not allege facts to show how Mr. Tharmaratnam's longevity or seniority at a large company conferred knowledge about the departure of a particular employee from an office in Israel, halfway around the world. Significantly, Plaintiff does not allege that Mr. Tharmaratnam even knew her, let alone that he knew the circumstances of her separation from IMS. Plaintiff's speculative "would have" known

allegation is plainly insufficient to "give rise to a reasonable inference that [Mr. Tharmaratnam]

knowingly and maliciously" defamed her.  *Linell*, 2017 WL 880853, at *2 (dismissing a

defamation claim where "[n]o allegations suggest that [the defendant] was not merely mistaken

or that she simply did not know").

Plaintiff offers similarly speculative allegations concerning Mr. Grenfell and Ms.

Shpangental having knowledge of Ms. Hillel's performance at IMS and Quintiles.  Am. Compl.

¶¶ 120, 123.  But, tellingly, Plaintiff does not allege any facts to demonstrate that their alleged

statements regarding not wanting to work, or to attend meetings, with her were knowingly false.

The Amended Complaint, therefore, still lacks any "non-conclusory allegations that

support a plausible inference of actual malice."  *Hosain-Bhuiyan*, 2017 WL 4122621, at *5

(granting motion to dismiss because the amended complaint failed to "provide factual support for

its conclusion that any defendant acted maliciously" or "any logical basis to conclude [that the

defendants] would be interested in maliciously making the alleged defamatory statements").

Accordingly, because Plaintiff has failed to "nudge" her claims of malice "across the line

from conceivable to plausible," with credible facts, her defamation and per se defamation claims

are both barred by the common interest privilege, and should be dismissed.

### 2. No Defamation Claim Can Arise from Expressions of Negative Personal Opinion

The two alleged statements regarding IQVIA personnel preferring not to work or to

attend meetings with Plaintiff are precisely the type of protected expressions of negative personal

opinion routinely held not actionable as defamation.  *See Vinas v. Chubb Corp.*, 499 F. Supp. 2d

427, 435-37 (S.D.N.Y. 2007).

Whether a statement is an actionable statement of fact or a non-actionable expression of

opinion depends upon four factors:

> (1) whether the specific language in issue has a precise, readily understood meaning or whether it is indefinite and ambiguous; (2) whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication in which the statement appears; and (4) a consideration of the broader social context or setting surrounding the communication, including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Id.* (internal citations and quotations omitted.)

Here, the second and third alleged statements are both expressions of subjective personal feelings, not definite and unambiguous facts. Such statements are not susceptible of a true or false characterization. They are, instead, properly characterized, in context, as expressions of personal opinion, offered for the purpose of identifying and assessing team members for the Obvio/IQVIA deal. Listeners hearing these alleged statements would, in that context, readily have understood them as such.

In her Amended Complaint, Plaintiff now focuses on the distinction under New York law between assertions of opinion that imply an undisclosed basis in fact (which are actionable), and statements of opinion that are either accompanied by a recitation of the facts upon which the opinion is based or that do not imply the existence of any undisclosed underlying facts (which are not actionable). *Tasso*, 1998 WL 841489, at *5 (Preska) (internal citations and quotations omitted). Plaintiff now alleges that, because Ms. Shpangental, Mr. Grenfell, and Mr. Pitale each had knowledge of her prior work performance, Am. Compl. ¶¶ 120, 123, 126, these statements "all implied that they knew something negative about Ms. Hillel, her job performance and/or her professional character that was negative", *id.* at ¶ 125. But Plaintiff does not allege that the two purported speakers, Mr. Grenfell and Ms. Shpangental, neither of whom is alleged to have spoken directly to Obvio, or Mr. Pitale, told anyone of their knowledge of Plaintiff's prior work performance. There was thus no basis for any such performance-based negative inference to be

drawn.  Plaintiff therefore cannot escape the intrinsic nature of the alleged statements (not wanting to work with someone or attend meetings with them) as opinions based on feelings, and not implying the existence of undisclosed facts about prior negative work performance.

In the context in which these alleged statements were made – commenting on a potential member of a team as part of a significant corporate transaction – the challenged statements are readily seen as expressions of personally held subjective feelings.  *See Colantonio v. Mercy Med. Ctr.*, 73 A.D.3d 966, 967-968 (2d Dep't 2010) (statements by hospital personnel to hospital administrators indicating that a doctor and others could not work with a certain physician were protected expressions of opinion, as were statements that the physician "has poor judgment", "is belligerent and very unreasonable", and "is not stable"); *Higgins v. Pascack Valley Hosp.*, 158 N.J. 404, 427 (1999) (co-employees' letters declaring their unwillingness to work with plaintiff were protected expressions of opinion not implying existence of undisclosed facts).  *See also MedCalf*, 938 F. Supp. 2d at 486-87 (emails between attorney and his wife questioning whether the attorney's secretary had a legitimate basis to be on leave were expressions of opinion, not implying knowledge of undisclosed facts); *Vinas,* 499 F. Supp. 2d at 435-37 (dismissing defamation claim because statement by Defendant's representative that plaintiff accounting firm was "too small", "no good" and should be replaced were non-actionable expressions of opinion, not implying knowledge of undisclosed facts); *Belly Basics, Inc. v. Mothers Work, Inc.,* 95 F. Supp. 2d 144, 145-147 (S.D.N.Y. 2000) (granting motion to dismiss where the statement in a press release by one party to a litigation, that the opposing party "seems not to care in the least about its legal agreements," was non-actionable opinion).

Put simply, the second and third statements alleged here, even if made, reflect nothing more than the preference of certain IQVIA personnel that Plaintiff not be included on the team.

14

As such, they are protected statements of personal opinion, and cannot serve as the basis of any claim for defamation or defamation per se.

### 3. The Defamation Claim Based on Special Harm (Count Eight) Should Be Dismissed for Failure to Satisfy New York Law

It is well established under New York law that if a defamation claim is not for defamation per se, then plaintiff must sufficiently plead special damages. "Special damages consist of the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation." *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 420-21 (S.D.N.Y. 2013).

Under New York law, Plaintiff cannot rely on lost income or benefits due to the termination of her *at-will* employment with Obvio and SPRIM to establish such special damages, Am. Compl. ¶¶ 165, 166, 168. *See MedCalf*, 938 F. Supp. 2d at 488 ("[W]here an employment is for an indefinite term it is presumed to be a hiring at will which may be freely terminated by either party at any time for any reason or even for no reason.").

Despite being put on notice of this rule by IQVIA's motion directed to her original Complaint, Plaintiff still nowhere alleges in her Amended Complaint that she was anything other than an at-will employee. Plaintiff's reference to an employment agreement with Obvio, Am. Compl. ¶¶ 160, 168, expressly labeling her an at-will employee, actually hurts her, rather than helps her. *See* Kenneth W. Taber Decl., Ex. A at § 2. Nor does Plaintiff identify any damages other than her lost salary and bonus potential at Obvio. Plaintiff has, therefore, failed to cure her

defective pleading of special damages, presenting another independent basis to dismiss Count Eight.[4]

**B.      Plaintiff's Tortious Interference with Prospective Economic Relations Claim (Count Ten) Fails Because Plaintiff Has Not Adequately Pled that IQVIA Acted Solely Out of Malice or Used Wrongful Means**

To state a claim for tortious interference with prospective economic relations under New York law, Plaintiff must allege facts sufficient to establish that:  (1) there was a business relationship with a third party; (2) defendant knew of that relationship and intentionally interfered with it; (3) *defendant either acted solely out of malice or used wrongful means*; *and* (4) defendant's interference caused injury to the relationship with the third party. *See Vinas,* 499 F. Supp. 2d at 434 (internal quotations and citations omitted; emphasis added).  These elements are conjunctive, not disjunctive.

Plaintiff must therefore show that IQVIA's conduct amounts "to a crime or an independent tort."  *MedCalf*, 938 F. Supp. 2d at 490 (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004)).  "Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently "culpable" to create liability for interference with prospective contracts or other nonbinding economic relations."  *Id.*

---

4   *See MedCalf*, 938 F. Supp. 2d at 487-488 (plaintiff failed to "allege[] facts that plausibly [gave] rise to the inference that she suffered special damages" because her at-will employment meant that she had no "continued right to employment"); *Dellefave v. Access Temporaries, Inc.*, No. 99 CIV. 6098 RWS., 2001 WL 25745, at *4 (S.D.N.Y. Jan. 10, 2001) (internal citations omitted) (granting motion for judgment on the pleadings, in part, because "[l]ost income does not qualify as special damages"); *Falk v. Anesthesia Assocs. of Jamaica*, 228 A.D.2d 326, 328 (1st Dep't 1996) (holding "[l]oss of income and benefits would not be sufficient" to establish special damages and affirming dismissal of defamation claim); *Vasarhelyi v. New Sch. for Soc. Research*, 230 A.D.2d 658, 660–61 (1st Dep't 1996) (internal citations omitted) (affirming dismissal of defamation claim because "[l]ost income does not qualify as special damages").

16

Accordingly, to successfully plead a tortious interference claim, Plaintiff must allege either "improper means" or "malice," which requires that she "sufficiently **allege a crime or independent unlawful action** by [IQVIA], or alternatively [Plaintiff] must plausibly allege that [IQVIA] acted with the **sole purpose of inflicting intentional harm**[.]"  *Id.* (emphasis added). Plaintiff's Amended Complaint does neither.

Plaintiff instead continues to rely entirely on the three alleged defamatory statements to support her tortious interference claim, with those three statements the only "independent unlawful action[s]" or wrongful means alleged by Plaintiff.  Because Plaintiff has failed to satisfy the pleading requirements for defamation, however, her tortious interference claim suffers the same fate as her defamation and defamation per se claims.  *See id.* at  490-91 (dismissing tortious interference claim where defamation claim was dismissed); *Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 02 Civ. 9567 (KNF), 2003 WL 22410623 (S.D.N.Y. Oct. 21, 2003) (dismissing plaintiff's tortious interference claim where plaintiff's defamation claim also failed); *Huntemann*, 1997 WL 527880, at *16 (Preska) (failure of defamation and § 1983 claims was "crippling to any attempt by plaintiff to claim that defendants used improper means to interfere with his prospective and at-will relationships").

Nor can Plaintiff plausibly allege that IQVIA acted here "solely out of malice."  As noted above, the large deal negotiated and closed between IQVIA and Obvio, including IQVIA's multi-million dollar investment in Obvio, Am. Compl. ¶¶ 32, 104, 143, establishes an entirely different reason for the alleged statements regarding a proposed team member.  *See Vinas*, 499 F. Supp. 2d at 434-35 (citations omitted) ("Actions taken, at least in part, to promote or advance defendants' economic self-interest are, by definition, not taken for the sole purpose of harming plaintiff."); *Huntemann*, 1997 WL 527880, at *16 (Preska) (granting summary judgment on

17

tortious interference claim where plaintiff could not show that defendants' sole purpose in making the alleged defamatory statements was to inflict harm; such statements were instead protected by the common interest privilege).

## V. BECAUSE PLAINTIFF ALREADY HAD TWO OPPORTUNITIES TO PROPERLY PLEAD HER CLAIMS, IQVIA'S MOTION TO DISMISS SHOULD BE GRANTED WITHOUT LEAVE TO REPLEAD

This Court should deny Plaintiff leave to replead because, even after a second attempt, Plaintiff has still failed to properly plead any of her claims against IQVIA.  *See Parker v. Citizen's Bank, N.A*., No. 19-CV-1454 (VEC), 2019 WL 5569680, at *6 (S.D.N.Y. Oct. 29, 2019) (denying leave to replead amended complaint where plaintiff twice failed to state a claim for defamation); *Munoz-Feliciano v. Monroe-Woodbury Cent. Sch. Dist*., No. 13-CV-4340 (CS), 2015 WL 1379702, at *14 (S.D.N.Y. Mar. 25, 2015), *aff'd*, 637 F. App'x 16 (2d Cir. 2016) (denying "third opportunity to bring a viable [] claim" after two failed efforts); *Coleman v. brokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir. 2010) (affirming denial of leave to amend where the district court already "afforded [plaintiff] one opportunity to amend the complaint").

## VI. THIS COURT SHOULD STRIKE UNNECESSARY AND INFLAMMATORY ALLEGATIONS FROM THE AMENDED COMPLAINT

Wholly unrelated to her claims against IQVIA, Plaintiff now adds to her Amended Complaint scurrilous allegations that IQVIA supposedly has a history of discriminatory and anticompetitive behavior, citing other litigations — none of which even resulted in an adjudication. *See* Am. Compl. ¶¶ 133, 170; *Id.* at 22 n.2, 27 n.4.  Because these allegations have no bearing whatsoever on Plaintiff's claims sounding in defamation and tortious interference, IQVIA moves to strike them from the Amended Complaint.  (*Id.* at ¶¶ 133, 170; *Id.* at 22 n.2, 27 n.4).

Rule 12(f) of the Federal Rules of Civil Procedure authorizes the striking of "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]o prevail on a motion under Rule 12(f), the moving party must show that [i] no evidence in support of the allegations would be admissible; [ii] that the allegations have no bearing on the issues in the case; and [iii] that to permit the allegations to stand would result in prejudice to the movant." *Bray v. Purple Eagle Entm't, Inc.*, No. 18 Civ. 5205 (GBD)(HBP), 2019 WL 1549044, at *6 (S.D.N.Y. Jan. 18, 2019) (internal citations and quotations omitted).

Here, Plaintiff does not bring discrimination claims against IQVIA, yet alleges prior discriminatory misconduct, relying on three unadjudicated complaints. Am. Compl., ¶ 170; *Id.* at 27 n.4. Because this "inherently prejudicial" allegation is entirely irrelevant to Plaintiff's defamation and tortious interference claims, it should be stricken.[5]

Plaintiff's references to unrelated antitrust litigation – which has likewise not resulted in an adjudication – should similarly be stricken. Am. Compl. ¶ 133; *Id.* at 22 n.2. This gratuitous allegation serves no purpose other than to try to improperly cast IQVIA in a derogatory light. *See Bray,* 2019 WL 1549044, at *10 (striking "allegations concerning completely unrelated litigation" that "serve only to besmirch [defendant's] character").

---

[5] *Bray*, 2019 WL 1549044, at *9 (striking allegations of sexual misconduct as "irrelevant to plaintiff's claims and inherently prejudicial"); *Donahue v. Asia TV USAs Ltd.*, 208 F. Supp. 3d 505, 517 (S.D.N.Y. 2016) (striking allegations regarding harassment of a co-worker "[b]ecause evidence of sexual harassment of other employees is wholly unrelated to [Plaintiff's] claims of national origin and age-based hostile work environment claims"); *Smith v. AVS Int'l, Inc.*, 148 F.Supp.2d 302, 317 (S.D.N.Y. 2001) (striking allegations regarding harassment of "other employees who were not also older white men" as "not relevant to any of [Plaintiff's] [discrimination] claims").

## VII.    **CONCLUSION**

Despite a second bite at the apple, Plaintiff still fails to plausibly plead defamation and tortious interference claims against IQVIA.  IQVIA therefore respectfully requests that the Court dismiss all three counts alleged here against it.  In addition, IQVIA respectfully requests that the Court strike the inflammatory and irrelevant allegations if this action proceeds as against IQVIA.

Dated:  August 31, 2020
      New York, New York

                              Respectfully submitted,

                  By:    /s/ Kenneth W. Taber
                              Kenneth W. Taber
                              Maria T. Galeno
                              PILLSBURY WINTHROP SHAW PITTMAN LLP
                              31 West 52nd Street
                              New York, New York 10019
                              Tel.: 212-858-1000
                              kenneth.taber@pillsburylaw.com
                              maria.galeno@pillsburylaw.com

                              *Counsel for Defendant IQVIA Inc.*