UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IRIS HILLEL,

Plaintiff,

-against-

OBVIO HEALTH USA, INC.; OBVIO HEALTH PTE. LTD.; SPRIM AMERICAS, INC.; IQVIA, INC.; MICHAEL SHLEIFER, IVAN JARRY, PRASANNA PITALE, ALISTAIR GRENFELL, DIKLA SHPANGENTAL, and ANAND THARMARATNAM in their individual and professional capacities,

Defendants.

No. 20-CV-4647 (LAP)

OPINION & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court are (1) Defendant IQVIA Inc.'s ("IQVIA") motion to dismiss and to strike pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f)[1] and (2) Defendants Prasanna Pitale, Alistair Grenfell, Dikla Shpangental, and Anand Tharmaratnam's (collectively, the "Individual Defamation Defendants") motion to dismiss pursuant to Federal Rules of

[1] (See Notice of Defendant IQVIA Inc.'s Motion to Dismiss and to Strike Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) ("IQVIA MTD"), dated Aug. 31, 2020 [dkt. no. 31]; see also Memorandum of Law in Support of Defendant IQVIA Inc.'s Motion to Dismiss and To Strike Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f) ("IQVIA Br."), dated Aug. 31, 2020 [dkt. no. 32]; Reply Memorandum in Further Support of Defendant IQVIA Inc.'s Motion to Dismiss and To Strike Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f), dated Oct. 13, 2020 [dkt. no. 51].)

Civil Procedure 12(b)(2) and 12(b)(6).[2] Plaintiff Iris Hillel opposes the motions.[3] For the reasons below, the motions to dismiss are GRANTED, and the motion to strike is DENIED as moot.

## I. Background

Between 2004 and 2012, Plaintiff worked for both IMS Holdings, Inc. ("IMS") and Quintiles Transnational Holdings, Inc. ("Quintiles") in various management positions. (Amended Complaint ("Am. Compl."), dated July 30, 2020 [dkt. no. 25] ¶¶ 24-25.) After Plaintiff left Quintiles, IMS and Quintiles merged and "[t]he combined organization was renamed IQVIA." (Id. ¶ 26.) Between 2013 and 2019, Plaintiff held various senior management roles at other healthcare and life-sciences companies. (Id. ¶¶ 27-29.)

---

[2] (See Notice of Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) by Defendants Prasanna Pitale, Alistair Grenfell, Dikla Shpangental, and Anand Tharmaratnam ("Ind. Defs. MTD"), dated Aug. 31, 2020 [dkt. no. 34]; Memorandum of Law in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) by Defendants Prasanna Pitale, Alistair Grenfell, Dikla Shpangental, and Anand Tharmaratnam, dated Aug. 31, 2020 [dkt. no. 34]; Reply Memorandum in Further Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) by Defendants Pitale, Grenfell, Shpangental, and Tharmaratnam, dated Oct. 13, 2020 [dkt. no. 52].)

[3] (See Plaintiff Iris Hillel's Memorandum of Law in Opposition to Defendant IQVIA, Inc.'s Motion to Dismiss and Strike ("Pl. Opp. to IQVIA"), dated Sept. 28, 2020 [dkt. no. 48]; Plaintiff Iris Hillel's Memorandum of Law in Opposition to Defendants Prasanna Pitale, Alistair Grenfell, Dikla Shpangental, and Anand Tharmaratnam's Motion to Dismiss ("Pl. Opp. to Ind. Defs."), dated Sept. 28, 2020 [dkt. no. 47].)

In August 2019, Plaintiff joined Defendants Obvio Health USA, Inc. and Obvio Health Pte. Ltd. (collectively, "Obvio") as CEO.[4]  At the time of Plaintiff's hiring, Obvio and IQVIA were "in the process of negotiating a large deal."  (Id. ¶ 104.) Given Plaintiff's knowledge of IQVIA obtained from her past employment, she "began working on the deal immediately."  (Id. ¶ 105.)  In the process, she worked closely with both IQVIA's legal team and Defendant Prasanna Pitale, a Senior Vice President of Global Consumer Health at IQVIA and a member of Obvio's Board of Directors.  (Id. ¶¶ 15, 105.)

However, Ms. Hillel's course of employment at Obvio quickly took a turn for the worse.   Only one week after Ms. Hillel joined Obvio, Defendant Anand Tharmaratnam, IQVIA's then-President of Asia Pacific, informed Defendant Michael Shleifer[5] and non-party Laurent Benissan that Plaintiff had been fired from IMS.  (Id. ¶¶ 18, 106.)  As a result of Mr. Tharmaratnam's statement, Plaintiff was required to provide Obvio with a "copy of her resignation letter to assure them that she was telling the truth about her resignation from IMS."  (Id. ¶ 112.)

---

[4] (Am. Compl. ¶¶ 8-10, 30.)  Defendant SPRIM Americas, Inc. ("SPRIM") is Obvio's parent company.  (Id. ¶¶ 11, 31.)  Neither SPRIM nor Obvio joins the motions to dismiss.

[5] Mr. Shleifer is the Co-Founder and Managing Partner of SPRIM.  (Id. ¶ 13.)  Mr. Shleifer does not join either motion to dismiss.

Shortly thereafter, on December 20, 2019, Plaintiff learned from Defendant Ivan Jarry[6] that Mr. Pitale had "informed him of two additional . . . statements" made about her by IQVIA employees. (Id. ¶ 114.) First, Defendant Alistair Grenfell, IQVIA's President for Europe, the Middle East, Africa and South Asia, said that he "did not want Ms. Hillel to work with IQVIA in Europe." (Id. ¶¶ 16, 115.) Second, Dikla Shpangental, IQVIA's Vice President for Israel, "stated that she would not attend any meetings with ObvioHealth if Ms. Hillel was going to be present." (Id. ¶¶ 17, 116.) Those statements, which were made shortly before the Obvio-IQVIA deal was set to close, left Plaintiff "dumbfounded" because "she had never had any issues working with any of these individuals" and both knew of her "exemplary performance" and "positive relationships with IQVIA employees and clients." (Id. ¶¶ 117, 120, 123, 129.)

Plaintiff asserts that there are no legitimate business reasons for Mr. Tharmaratnam, Mr. Pitale, Mr. Grenfell, and Ms. Shpangental to have made those statements. (Id. ¶¶ 110, 121, 124, 137.) Instead, Plaintiff suggests that those declarations were made (1) to harm her professional reputation and to interfere with her employment at Obvio and (2) to undermine

[6] Mr. Jarry is Obvio's current CEO and a Co-Founder and Managing Partner of SPRIM. (Am. Compl. ¶ 14.) Mr. Jarry does not join in either motion to dismiss.

Obvio's efforts to consummate deals with third parties that would have been competitive to IQVIA's services. (Id. ¶¶ 110, 121, 124, 129-132, 134, 136.) Under the terms of their deal, Obvio could continue such work during a six-month transition period following the deal's closing. (Id. ¶¶ 129-132.)

Events came to a boil on March 23, 2020. That morning, Ms. Hillel was in a car accident, which required her to be hospitalized. (Id. ¶¶ 156-157.) A few hours after informing Mr. Jarry of the accident, Plaintiff received an email from Cheryl Walter, Chief Talent Officer at SPRIM, informing her that her employment was being terminated. (Id. ¶ 159.) Plaintiff's termination letter stated that she was "unable to perform or execute the full range of duties expected of the Chief Executive Officer of Obvio." (Id. ¶ 160.) Plaintiff alleges that her firing was caused, at least in part, by the IQVIA employees' statements. (Id. ¶¶ 164-165.)

A few months later, Plaintiff filed this action, asserting, inter alia, claims for defamation, defamation per se, and tortious interference with prospective economic relations. (See Complaint, dated June 17, 2020, [dkt. no. 1].) IQVIA moved to dismiss the complaint,[7] but Plaintiff amended her complaint as of

[7] (See Notice of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) by Defendant IQVIA, Inc., dated July 8, 2020 [dkt. no. 12]; see also Memorandum of Law in Support of Defendant

(continued on following page)

right. Shortly thereafter, IQVIA and the Individual Defamation Defendants moved to dismiss the Amended Complaint for failure to state a claim. (See IQVIA MTD at 1; Ind. Defs. MTD at 2.) The Individual Defamation Defendants, all of whom are citizens and residents of foreign countries,[8] separately moved to dismiss the claims against them for lack of personal jurisdiction. (See Ind. Defs. MTD at 1-2.) Plaintiff opposes both motions. (See Pl. Opp. to IQVIA at 1; Pl. Opp. to Ind. Defs. at 1.) Discovery has been stayed pending the Court's resolution of the motions. (See Order, dated Oct. 28, 2020 [dkt. no. 57] at 5.)

## II. Legal Standards

### a. Fed. R. Civ. P. 12(b)(2)

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." Troma Entm't, Inc. v. Centennial Pictures Inc., 729 F.3d 215, 217 (2d Cir. 2013). "In order to survive a motion

(continued from previous page) IQVIA Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("IQVIA Original MTD"), dated July 8, 2020 [dkt. no. 13].)

[8] (See Am. Compl. ¶¶ 15-18; see also Declaration of Prasanna Pitale in Support of Motion to Dismiss ("Pitale Decl."), dated Aug. 31, 2020 [dkt. no. 37] ¶ 2; Declaration of Alistair Grenfell in Support of Motion to Dismiss ("Grenfell Decl."), dated Aug. 31, 2020 [dkt. no. 38] ¶ 2; Declaration of Dikla Shpangental in Support of Motion to Dismiss ("Shpangental Decl."), dated Aug. 31, 2020 [dkt. no. 39] ¶ 2; Declaration of Anand Tharmaratnam in Support of Motion to Dismiss ("Tharmaratnam Decl."), dated Aug. 31, 2020 [dkt. no. 40] ¶ 2).)

to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 167-68 (2d Cir. 2015). "Th[at] prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on Sept. 11, 2001), 714 F.3d 659, 673 (2d Cir. 2013) (quotation marks omitted).

"In evaluating whether the requisite showing has been made," the Court must "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs."[9] The Court will not, however, "draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." O'Neill, 714 F.3d at 673.

**b. Fed. R. Civ. P. 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

[9] Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013). "[C]ourts may rely on . . . materials outside the pleading[s] when ruling on 12(b)(2) motions." Mount Whitney Invs., LLLP v. Goldman Morgenstern & Partners Consulting, LLC, No. 15 Civ. 4479 (ER), 2017 WL 1102669, at *3 (S.D.N.Y. Mar. 23, 2017).

the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Palin v. New York Times Co., 940 F.3d 804, 810 (2d Cir. 2019).  Evaluating "whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

When considering a motion to dismiss, the Court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences." Dane v. UnitedHealthcare Ins. Co., 974 F.3d 183, 188 (2d Cir. 2020).  It is not required, however, "to credit conclusory allegations or legal conclusions couched as factual allegations." Id. (ellipsis omitted).  "Accordingly, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (cleaned up). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679.

Because Plaintiff's claims against IQVIA and the Individual Defamation Defendants arise under state law, the Court "must follow the law as enunciated by the highest court of the state,

here, the New York Court of Appeals." Rodland v. Judlau
Contracting, Inc., 844 F. Supp. 2d 359, 363 (S.D.N.Y. 2012).  If
the Court of Appeals has not definitively ruled, the "Court is
bound to apply the law as interpreted by a state's intermediate
appellate courts unless there is persuasive evidence that the
state's highest court would reach a different conclusion." V.S.
v. Muhammad, 595 F.3d 426, 432 (2d Cir. 2010).

    **c. Personal Jurisdiction**

"Personal jurisdiction over a foreign defendant . . .
requires a two-step inquiry." Shovah v. Roman Catholic Diocese
of Albany, N.Y., Inc. (In re Roman Catholic Diocese of Albany,
N.Y., Inc.), 745 F.3d 30, 37 (2d Cir. 2014).  First, the Court
"appl[ies] the forum state's long-arm statute" to determine
whether jurisdiction is legislatively authorized. Chloe v.
Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir.
2010).  Second, if jurisdiction lies, the Court turns to
"whether the exercise of personal jurisdiction . . . comports
with the Due Process Clause." Sonera Holding B.V. v. Cukurova
Holding A.S., 750 F.3d 221, 224 (2d Cir. 2014) (per curiam).

New York's long-arm statute "does not extend in all
respects to the constitutional limits established by
International Shoe . . . and its progeny," so the "state
statutory and federal constitutional standards are . . . not co-

extensive."[10] New York's long-arm statute enumerates specific acts for which jurisdiction is authorized. That statute provides, in relevant part, that "[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). "In determining the strength of the contacts" under that provision, federal courts "look to the totality of Defendants' contacts with the forum state." Chloe, 616 F.3d at 164.

"New York courts evaluating specific jurisdiction under section 302(a)(1) look to both the language of the statute and the relation between the alleged conduct and the cause of action." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007). To determine whether section 302(a)(1) authorizes jurisdiction, "a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." Licci, 673 F.3d at 60 (cleaned up).

[10] Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 60-61 (2nd Cir. 2012) (citation omitted). It will be the "rare" case, however, where New York's long-arm statute permits jurisdiction but the Due Process Clause does not. D&R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro, 78 N.E.3d 1172, 1177 (N.Y. 2017).

When applying section 302(a)(1), courts "first determine if [the] defendant purposefully availed itself of the privilege of conducting activities in the state by transacting business in New York."[11] "A non-domiciliary defendant transacts business in New York when on his or her own initiative, the non-domiciliary projects himself or herself into this state to engage in a sustained and substantial transaction of business." D&R Glob. Selections, 78 N.E.3d at 1175 (brackets omitted). In other words, "where the non-domiciliary seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship, a non-domiciliary can be said to transact business within the meaning of [section] 302(a)(1)." Paterno v. Laser Spine Inst., 23 N.E.3d 988, 993 (N.Y. 2014). "Although it is impossible to precisely fix those acts that constitute a transaction of business," Fischbarg v. Doucet, 880 N.E.2d 22, 26 (N.Y. 2007), "New York courts do not interpret 'transacting business' to include mere defamatory utterances sent into the state," Best Van Lines, 490 F.3d at 248 (alterations omitted).

[11] D&R Glob. Selections, 78 N.E.3d at 1175 (quotation marks omitted). "This 'purposeful availment' language defining 'transacting business' has been adopted by the New York Court of Appeals from Supreme Court cases analyzing the constitutional limitations on a state's power to assert personal jurisdiction over a non-domiciliary defendant." Best Van Lines, 490 F.3d at 247 (cleaned up) (citing Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 43 (N.Y. 1988)).

"In addition" to transacting business in New York, "the plaintiff's cause of action must have an 'articulable nexus' or 'substantial relationship' with the defendant's transaction of business" in the state. D&R Glob. Selections, 78 N.E.3d at 1176 (quoting Licci v. Lebanese Canadian Bank, 984 N.E.2d 893, 900 (N.Y. 2012)). That standard is "relatively permissive," requiring, "[a]t the very least, [that] there must be a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." D&R Glob. Selections, 78 N.E.3d at 1176 (quotation marks omitted). But "[j]urisdiction is not justified . . . where the relationship between the claim and transaction is too attenuated, and a connection that is 'merely coincidental' is insufficient to support jurisdiction." Licci, 673 F.3d at 66 (cleaned up). Relevantly, when applying this prong, New York courts have found "that they lacked jurisdiction over out-of-state defendants accused of having uttered defamatory falsehoods where the defamation claim did not arise from the defendants' specific business transactions in New York." Best Van Lines, 490 F.3d at 249-50 (cleaned up).

**d. Defamation and Defamation Per Se**

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name." Albert v. Loksen, 239 F.3d 256, 265 (2d Cir. 2001)

"[M]aking a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion or disgrace constitutes defamation." Tannerite Sports, LLC v. NBCUniversal News Grp., 864 F.3d 236, 244 (2d Cir. 2017) (quoting Thomas H. v. Paul B., 965 N.E.2d 939, 942 (N.Y. 2012)). The elements of a defamation claim are (1) "a false statement," (2) "published without privilege or authorization to a third party," (3) "constituting fault as judged by, at a minimum, a negligence standard," and (4) "either caus[ing] special harm or constitut[ing] defamation per se."[12]

"A statement is not defamatory if it is privileged or authorized." Wexler v. Allegion (UK) Ltd., 374 F. Supp. 3d 302, 311 (S.D.N.Y. 2019). "New York recognizes a 'common interest' qualified privilege that protects communications 'made by one person to another upon a subject in which both have an

---

[12] Watson v. NY Doe 1, 439 F. Supp. 3d 152, 160 (S.D.N.Y. 2020) (quoting Kamchi v. Weissman, 1 N.Y.S.3d 169, 180 (2d Dep't 2014)); accord Conklin v. Laxen, 118 N.Y.S.3d 893, 896 (4th Dep't 2020); Levy v. Nissani, 115 N.Y.S.3d 418, 420 (2d Dep't 2020); Greenberg v. Spitzer, 62 N.Y.S.3d 372, 383 (2d Dep't 2017); Rosner v. Amazon.com, 18 N.Y.S.3d 155, 157 (2d Dep't 2015); Accadia Site Contracting, Inc. v. Skurka, 10 N.Y.S.3d 772, 774 (2d Dep't 2015); D'Amico v. Corr. Med. Care, Inc., 991 N.Y.S.2d 687, 694 (4th Dep't 2014); see also Tannerite, 864 F.3d at 245 ("To prove a claim for defamation, a plaintiff must show: (1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm." (quoting Stepanov v. Dow Jones & Co., 987 N.Y.S.2d 37, 41-42 (1st Dep't 2014))).

interest.'"  Chao v. Mount Sinai Hosp., No. 10-CV-2869, 2010 WL
5222118, at *7 (S.D.N.Y. Dec. 17, 2010) (quoting Liberman v.
Gelstein, 605 N.E.2d 344, 349 (1992)).  "This privilege
encompasses a defamatory communication on any subject matter in
which the party communicating has an interest made to a person
having a corresponding interest."  Chandok v. Klessig, 632 F.3d
803, 815 (2d Cir. 2011) (quotation marks and ellipsis omitted).
The privilege frequently arises in the context of workplace
communications.  See, e.g., Ratajack v. Brewster Fire Dep't,
Inc. of the Brewster-Se. Joint Fire Dist., 178 F. Supp. 3d 118,
160-61 (S.D.N.Y. 2016) (collecting cases).

The "qualified privilege may be overcome by a showing
either" of (1) constitutional, i.e., "actual," malice, or (2)
"common-law malice."  Chandok, 632 F.3d at 815.  The difference
between the two "is that the former focuses on the defendant's
attitude toward the plaintiff, the latter on the defendant's
attitude toward the truth."  Konikoff v. Prudential Ins. Co. of
Am., 234 F.3d 92, 99 (2d Cir. 2000).  "At the pleadings stage, a
plaintiff can overcome the common interest privilege by
alleging" either variety of malice, but "[m]ere conclusory
allegations, or charges based upon surmise, conjecture, and
suspicion are insufficient to defeat the claim of qualified
privilege."  Thai v. Cayre Grp., Ltd., 726 F. Supp. 2d 323, 330
(S.D.N.Y. 2010).

"When actual malice in making a defamatory statement is at issue, the critical question is the state of mind of those responsible for the publication." Palin, 940 F.3d at 810. Actual malice means publication "with knowledge that the statements were false or with reckless disregard as to their falsity." Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015). "Reckless disregard as to falsity means that the statement is made with a high degree of awareness of the publication's probable falsity or while the defendant in fact entertained serious doubts as to the truth of the publication." Albert, 239 F.3d at 272 (cleaned up). "Mere falsity, however, is not enough to establish malice." Ratajack, 178 F. Supp. 3d at 162.

"Common-law malice," on the other hand, "means spite or ill will." Chandok, 632 F.3d at 815 (alteration omitted) (quoting Liberman, 605 N.E.2d at 349). Unlike actual malice, common-law malice "defeats the privilege only if it is the one and only cause for the publication." Albert, 239 F.3d at 272 (quotation marks omitted). "In this context, . . . spite or ill will refers not to [a] defendant's general feelings about [the] plaintiff, but to the speaker's motivation for making the defamatory statements." Liberman, 605 N.E.2d at 350. Therefore, "[i]f the defendant's statements were made to further the interest protected by the privilege, it matters not that defendant also despised plaintiff." Id.

How this qualified privilege operates in practice is somewhat in flux. Recent caselaw suggests that a plaintiff must plead, as an element of her cause of action, that the allegedly defamatory statement is not privileged.[13] Other caselaw, however, suggests that the privilege operates as an affirmative defense that is not properly resolved on a motion to dismiss.[14] The New York Court of Appeals has not yet reconciled these two lines of cases.

**e. Tortious Interference with Prospective Business Relations**

"A claim for tortious interference with prospective business relations does not require a breach of an existing contract, but the party asserting the claim must meet a 'more culpable conduct' standard." Law Offices of Ira H. Leibowitz v. Landmark Ventures, Inc., 15 N.Y.S.3d 814, 818 (2d Dep't 2015) (quoting NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc., 664 N.E.2d 492, 496 (N.Y. 1996)). "Under New York law, . . . the plaintiff must allege that (1) it had a business relationship

---

[13] See, e.g., Watson, 439 F. Supp. 3d at 160; Conklin, 118 N.Y.S.3d at 896; Levy, 115 N.Y.S.3d at 420. For its part, the Restatement supports that approach. RESTATEMENT (SECOND) OF TORTS § 558 (1977) (detailing the elements of a defamation claim, including, inter alia, "an unprivileged publication to a third party").

[14] See, e.g., Menaker v. C.D., No. 217-CV-5840 (DRH) (AYS), 2018 WL 5776533, at *6 (E.D.N.Y. Nov. 1, 2018); Giuffre v. Maxwell, 165 F. Supp. 3d 147, 155 (S.D.N.Y. 2016); Demas v. Levitsky, 738 N.Y.S.2d 402, 410 (3d Dep't 2002).

with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006) (quotation marks omitted).

"Wrongful means include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." Astro Kings, LLC v. Scannapieco, 127 N.Y.S.3d 493, 495 (2d Dep't 2020) (quoting Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 406 N.E.2d 445, 449 (N.Y. 1980)). "[A]s a general rule, the defendant's conduct must amount to a crime or an independent tort": "Conduct that is not criminal or tortious will generally be lawful and thus insufficiently culpable to create liability . . . ." Carvel Corp. v. Noonan, 818 N.E.2d 1100, 1103 (N.Y. 2004) (quotation marks omitted). Actions "motivated, at least in part, by economic self interest" are not taken for the sole purpose of harming the plaintiff. Out of Box Promotions, LLC v. Koschitzki, 866 N.Y.S.2d 677, 680 (2d Dep't 2008).

## III. Discussion

"When the Court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was

stated by the complaint." Prospect Funding Holdings, LLC v. Vinson, 256 F. Supp. 3d 318, 323 (S.D.N.Y. 2017). Accordingly, the Court will address the Individual Defamation Defendants' motion before turning to IQVIA's motion.

**a. Individual Defamation Defendants' Motion**

Plaintiff avers that the Individual Defamation Defendants are subject to this Court's jurisdiction pursuant to section 302(a)(1) of New York's long-arm statute.[15] Detailing fourteen allegations based on the Amended Complaint, Plaintiff asserts that section 302(a)(1)'s first prong is satisfied because "the Individual [Defamation] Defendants, through their employment with IQVIA, had business dealings with ObvioHealth within the State of New York, including with Plaintiff herself and Defendant Jarry." (Pl. Opp. to Ind. Defs. at 6.) Moreover, Plaintiff maintains that section 302(a)(1)'s second requirement

[15] (See Pl. Opp. to Ind. Defs. at 4-5.) Because Plaintiff invokes only that subsection to support personal jurisdiction, the Court's analysis will train on that provision. However, The Court also observes that section 302(a)'s other subsections are inapplicable. Subsection (a)(4) does not apply because none of the Individual Defamation Defendants owns, uses, or controls real property located in New York. (See Pitale Decl. ¶ 4; Grenfell Decl. ¶ 4; Shpangental Decl. ¶ 4; Tharmaratnam Decl. ¶ 4.) Likewise, subsections (a)(2) and (a)(3) do not apply because they specifically except defamation claims. See N.Y. C.P.L.R. § 302(a)(2)-(3); see also Mount Whitney, 2017 WL 1102669, at *4 ("Where the entire claim sounds in defamation, a plaintiff may not evade the statutory exception under Sections 302(a)(2) and (3) by recasting their cause of action as something other than defamation." (quotation marks omitted)).

is satisfied because her defamation claims relate specifically to the Individual Defamation Defendants' "business dealings" with Obvio as well as Mr. Jarry and Plaintiff, both of whom live and work out of New York. (Id. at 8.) For the reasons below, Plaintiff's position misapprehends section 302(a)(1)'s standard.

At the outset, it is important to recognize that Plaintiff cannot impute IQVIA's contacts with New York to the Individual Defamation Defendants: Employees' contacts with a forum "are not to be judged according to their employer's activities there." Calder v. Jones, 465 U.S. 783, 790 (1984). Therefore, even if jurisdiction is proper over IQVIA, jurisdiction over the Individual Defamation Defendants "does not automatically follow." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984). The Individual Defamation Defendants' "contacts with the forum State must be assessed individually," id., and the Court can only exercise jurisdiction if (1) they transacted business in New York and (2) Plaintiff's claims arose from that business, see Licci, 673 F.3d at 60.

The Amended Complaint falls short on both fronts. The Individual Defamation Defendants--all of whom, as Plaintiff admits, reside abroad, (see Am. Compl. ¶¶ 15-18)--have few contacts with New York. Mr. Pitale, who has the most, has only traveled to the state for business four times since Plaintiff's employment at Obvio began, spending less than two weeks there in

total.  (See Pitale Decl. ¶ 5.)  Over that same period, Mr.
Grenfell has only made two such trips, spending less than a week
in New York in total.  (See Grenfell Decl. ¶ 5.)  Going further,
during the same timeframe, Mr. Tharmaratnam has traveled to New
York only once to attend a single meeting unrelated to Obvio,
and Ms. Shpangental has not been to New York at all.  (See
Tharmaratnam Decl. ¶ 5; Shpangental Decl. ¶ 5.)

In fact, the lion's share of Plaintiff's cited allegations
merely assert, appearing to rely on IQVIA's ongoing negotiations
with Obvio, that the Individual Defamation Defendants "engaged
in tortious interference and defamed Ms. Hillel while she was
working and living in New York."  (Pl. Opp. to Ind. Defs. at 6
(emphasis added); see also id. at 7 (making identically worded
allegations as to Mr. Tharmaratnam, Mr. Grenfell, and Ms.
Shpangental).)  That is plainly insufficient.  "New York courts
construe 'transacts any business within the state' more narrowly
in defamation cases," and "uttering a defamation" into New York,
"no matter how loudly, is not a 'transaction of business' that
may provide the foundation for personal jurisdiction."  Best Van
Lines, 490 F.3d at 248 (alterations omitted).  "[S]omething
more" is necessary, id. at 249, but the Amended Complaint offers
precious little.  Save for one allegation regarding Mr. Pitale,
Plaintiff alleges no negotiations, communications,
correspondence, discussions, or any other conduct--beyond some

general involvement in the IQVIA-Obvio deal--undertaken by the Individual Defamation Defendants that could constitute their reaching into New York to transact business. Plaintiff's cases, all of which involved that "something more," are inapposite.[16]

Plaintiff does point to one Obvio-related business trip that Mr. Pitale made to New York in November 2019, (see id. at 6 (citing Pitale Decl. ¶ 6)), which could be "sufficient to invoke jurisdiction" if Mr. Pitale's activities "were purposeful and there is a substantial relationship between the transaction and the claim[s] asserted." Eades, 799 F.3d at 168. But that

[16] See Golden Archer Invs., LLC v. Skynet Fin. Sys., No. 11 CIV. 3673 RJS, 2012 WL 123989, at *5 (S.D.N.Y. Jan. 3, 2012) (holding that personal jurisdiction was appropriate related to contract (not defamation) claim where, "[a]fter entering the contract, Skynet regularly communicated with Golden Archer in New York through e-mails, phone calls, and online video conferences to discuss the project development"); Edward B. Beharry & Co., Ltd. v. Bedessee Imports Inc., No. 09-CV-0077 (DLI) (JMA), 2010 WL 1223590, at *3 (E.D.N.Y. Mar. 23, 2010) ("[P]laintiff alleges that defendant contributed to the publication of the allegedly defamatory remarks in The Caribbean New Yorker, which is distributed in New York."); World Wrestling Fed'n Entm't, Inc. v. Bozell, 142 F. Supp. 2d 514, 533 (S.D.N.Y. 2001) (holding that personal jurisdiction was proper where the defendant "appeared in a fundraising video for the PTC," which contained the defamatory statements and "which was distributed to New York residents"); Montgomery v. Minarcin, 693 N.Y.S.2d 293, 296 (3d Dep't 1999) (holding that jurisdiction was proper where "it [wa]s undisputed that all of the operative facts giving rise to plaintiff's claims occurred in this State"); Modica v. Westchester Rockland Newspapers, Inc., 283 N.Y.S.2d 939, 941 (N.Y. Sup. Ct. 1967) (holding that personal jurisdiction was proper where "[t]here [was] no question but that the act complained of was connected with the transaction of business in the State of New York").

"substantial relationship" is wholly absent--the Amended Complaint does not allege that any of the defamatory statements related to Mr. Pitale's trip. In fact, Mr. Pitale's November 2019 trip appears to be sandwiched between the defamatory statements, which were allegedly made in August 2019 and December 2019. (See Am. Compl. ¶¶ 30, 106, 114.)

Even if the Individual Defamation Defendants' minimal ties to New York would be enough to satisfy the transacting business criterion, Plaintiff still must show that her claims "aris[e] from" those transactions. Licci, 673 F.3d at 60. She cannot. When considering defamation claims, New York Courts have "concluded that they lacked jurisdiction . . . where the . . . claim did not arise from the defendants' specific business transactions in New York." Best Van Lines, 490 F.3d at 249-50 (emphasis added) (quotation marks omitted). However, as just mentioned, Plaintiff does not relate any of the allegedly defamatory statements to Mr. Pitale's travel to New York. And the connections between the claims and the other Individual Defamation Defendants' contacts are even more attenuated. Plaintiff does not allege that Mr. Tharmaratnam's or Mr. Grenfell's statements were made in connection with any of their minimal New-York-targeting activities. Likewise, the claim against Ms. Shpangental, who has not been to New York and who is not alleged to have even spoken with anyone there since January

2019, is even further removed. In fact, the Amended Complaint recognizes that all the alleged statements "had no connection to [the Individual Defamation Defendants'] business dealings and were separate and apart from any business relationship between IQVIA, ObvioHealth and SPRIM." (Am. Compl. ¶ 137.) Therefore, Plaintiff's claims premised on those statements do not arise from the Individual Defamation Defendants' contacts (or lack thereof) with New York.[17]

In sum, Plaintiff's contacts provide the only nexus between the Individual Defamation Defendants, "the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 284 (2014). But Plaintiff cannot leverage her own contacts with New York to bootstrap personal jurisdiction over non-domiciliary defendants. Id. ("[T]he relationship must arise out of contacts that the defendant himself creates with the forum State." (quotation marks omitted)). Accordingly, Plaintiff's claims against the Individual Defamation Defendants must be dismissed.

---

[17] See, e.g., Wilder v. News Corp., No. 11 Civ. 4947 (PGG), 2015 WL 5853763, at *11 (S.D.N.Y. Oct. 7, 2015) ("[I]t is irrelevant that Brooks traveled to the United States to discuss NI Group's budget, because Plaintiffs do not allege that these discussions relate in any way to the conduct underlying the instant case."); Penachio v. Benedict, No. 10 Civ. 371 (SCR) (PED), 2010 WL 4505996, at *4 (S.D.N.Y. Nov. 9, 2010) (Preska, J.) (holding that "while Defendants have observed proceedings in New York, contacted parties to the proceedings, and allegedly have some profit-making objective related to proceedings, the connection between the defamatory act and Defendants' dealings in New York is insufficient" to support personal jurisdiction).

As a last attempt to avoid dismissal, Plaintiff posits that the Court should "allow for targeted jurisdictional discovery." (Pl. Opp. to Ind. Defs. at 10.) The Court declines Plaintiff's invitation. Plaintiff has not established a prima facie basis for jurisdiction, even after having already amended her complaint. The Court of Appeals has limited the availability of jurisdictional discovery when a plaintiff fails to clear that hurdle, see, e.g., Jazini v. Nissan Motor Co., 148 F.3d 181, 185-86 (2d Cir. 1998), and "district courts routinely reject requests for jurisdictional discovery" under similar circumstances, G31000 N. Am., Inc. v. Paris, No. 14-CV-3885 (VEC), 2014 WL 6604790, at *6 (S.D.N.Y. Nov. 21, 2014) (cleaned up).

**b. IQVIA's Motion**

With her claims against the Individual Defamation Defendants dismissed, Plaintiff is left with only her claims against IQVIA. Plaintiff asserts three, all of which arise under New York law: (1) defamation; (2) defamation per se, and (3) tortious interference with prospective business relations. (Am. Compl. ¶¶ 207-231.) The Court addresses each in turn.

**1. Defamation and Defamation Per Se**

IQVIA contends that dismissal of Plaintiff's defamation claims is proper because the alleged statements are protected by

New York's qualified common interest privilege. (See IQVIA Br. at 8-12.) Recall that the following statements are at issue:

- Mr. Tharmaratnam told Mr. Shleifer and Mr. Benissan that Plaintiff "had been fired from IMS." (Am. Compl. ¶ 106.)
- Mr. Pitale told Mr. Jarry that Mr. Grenfell and Ms. Shpangental had made two statements regarding Plaintiff. (Id. ¶ 114.)
- Mr. Grenfell stated that he "did not want Ms. Hillel to work with IQVIA in Europe." (Id. ¶ 115.)
- Ms. Shpangental stated that "she would not attend any meetings with ObvioHealth if Ms. Hillel was going to be present." (Id. ¶ 116.)

IQVIA maintains that the privilege applies to those statements for two reasons: (1) they were made in the context of the ongoing negotiations related to the IQVIA-Obvio deal, a venture in whose success both parties shared an interest, (see IQVIA Br. at 8-11); and (2) Plaintiff has failed plausibly to allege malice to overcome the privilege, (see id. at 11-12). Plaintiff counters with three points: (1) the Court cannot properly consider the privilege at the motion-to-dismiss stage, (see Pl. Opp. to IQVIA at 11-13); (2) the Amended Complaint's allegations show that the privilege does not apply, (see id. at 13-15); and (3) should the privilege apply, the Amended Complaint sufficiently alleges malice, (see id. at 15-17).

As an initial matter, Plaintiff contends "that the common interest privilege cannot, as a matter of law, form the basis for a motion to dismiss at the pleading stage." (Id. at 13.)

"Indeed," Plaintiff suggests, "every court that has taken on the issue has" reached that conclusion. (Id. at 11.) The caselaw, Plaintiff asserts, uniformly confirms that the privilege operates as an affirmative defense whose elements IQVIA bears the burden to prove "through evidence." (Id.) Based on that, Plaintiff maintains that the privilege may not be considered until summary judgment at the earliest. (See id. at 11-13.)

Plaintiff has overplayed her hand: The caselaw is not nearly as one-sided as she suggests. True enough, there is caselaw that supports Plaintiff's characterization of the privilege. See, e.g., Demas, 738 N.Y.S.2d at 410. But Plaintiff fails to account for the competing (and more recent) line of cases from New York courts that recognizes that a plaintiff must establish, as an element of her claim, that the allegedly defamatory statement is not privileged. See, e.g., Conklin, 118 N.Y.S.3d at 896; Levy, 115 N.Y.S.3d at 420. Given that latter branch of caselaw, which is of a more modern vintage, the Court finds that considering Plaintiff's ability (or lack thereof) to overcome the privilege is proper on a motion to dismiss.[18]

---

[18] See, e.g., Hosain-Bhuiyan v. Barr Labs., Inc., No. 17 CV 114 (VB), 2017 WL 4122621, at *4-5 (S.D.N.Y. Sept. 14, 2017) (dismissing plaintiff's claim for failure to plead malice sufficient to overcome the common interest privilege); Orenstein v. Figel, 677 F. Supp. 2d 706, 711 (S.D.N.Y. 2009) (rejecting as

(continued on following page)

Next, Plaintiff avers that the privilege does not apply at all.  (See Pl. Opp. at 13-15.)  To support that, Plaintiff points out that "nowhere in the Amended Complaint is it alleged that the defamatory statements at issue were designed to further any common interest between" Obvio and IQVIA.  (Id. at 14.)  Instead, Plaintiff suggests that the statements were contrary to Obvio's interests because they were, in fact, uttered for the purpose of undermining Obvio's business opportunities that were competitive to IQVIA's.  (See id. at 14-15.)

Plaintiff's contention misses the mark.  Plaintiff's alleging one motivation for the IQVIA employees' statements, even one counter to Obvio's goals, does not necessarily mean that the common interest privilege does not apply.  For the privilege to apply, IQVIA and Obvio need only have a "corresponding" interest.  E.g., Mughetti v. Makowski, 79 N.Y.S.3d 749, 751 (3d Dep't 2018) (emphasis added); Chandok, 632 F.3d at 815 (same).  That interest need not be identical or even aligned.  See, e.g., Yong Ki Hong v. KBS Am., Inc., 951 F. Supp. 2d 402, 437 (E.D.N.Y. 2013).  Indeed, the privilege can (and

---

(continued from previous page)
"unavailing" argument that defendant cannot raise common interest privilege on motion to dismiss "in light of the incorporation of a lack of privilege into the elements of a defamation claim").

should) apply even if the parties' interests, though common in subject, are diametrically opposed.[19]

From the face of the complaint, the Court easily concludes that a common interest exists: IQVIA and Obvio had a significant business relationship with serious financial stakes.[20] Indeed, as Plaintiff acknowledges, IQVIA and Obvio were in the process of negotiating a "large deal" during Plaintiff's tenure with Obvio, and Plaintiff was "heavily involved" with that deal from her first day on the job. (Am. Compl. ¶¶ 104, 139; see also id. ¶¶ 105, 113.) An employee's fitness to work on that deal--particularly in a role as significant as Plaintiff's--obviously relates to that common interest.[21] Thus, Plaintiff's suggestions

---

[19] See Yong Ki Hong, 951 F. Supp. 2d at 437. That makes sense considering the privilege's purpose is to protect debate by permitting "an interested participant to defend his position vigorously without fear of being penalized for his statements should some of them actually turn out to be erroneous." Stillman v. Ford, 238 N.E.2d 304, 307 (N.Y. 1968).

[20] Courts have found such an interest to be sufficient to apply the privilege. See, e.g., Travelex Currency Servs., Inc. v. Puente Enters., Inc., No. 18 CIV. 1736 (ER), 2019 WL 1259102, at *10 (S.D.N.Y. Mar. 19, 2019) (suggesting that the common interest privilege applies "when parties discuss a topic concerning their business relationship"); Grayson v. Ressler & Ressler, 271 F. Supp. 3d 501, 515 (S.D.N.Y. 2017) (same); Rupert v. Sellers, 411 N.Y.S.2d 75, 82 (4th Dep't 1978) (stating that the privilege applies where the parties have a "common interest in the same property, business or business relationship").

[21] During oral argument, Plaintiff's counsel repeatedly asserted that the privilege did not apply because the alleged statements were not made "in furtherance" of any common interest

(continued on following page)

regarding IQVIA's supposed ulterior motives are relevant only to the extent that they evidence malice.

Finally, Plaintiff maintains that "the Amended Complaint plainly alleges facts sufficient to support a finding of actual malice." (Pl. Opp. to IQVIA at 16.) Again, however, Plaintiff misses the mark. Although Plaintiff consistently uses the term "actual malice," she appears to make at least some arguments that sound in common-law malice. In any event, Plaintiff has failed to plead sufficient plausible, non-conclusory facts to defeat the privilege under either standard.

Related to common-law malice, Plaintiff suggests that the allegedly defamatory statements "had no legitimate business purposes and were clearly made with the intent to harm Ms. Hillel's professional reputation and interfere with her employment relationship." (Id. at 17 (brackets omitted).) Those conclusory assertions "are not entitled to a presumption

---

(continued from previous page)
between the parties. (E.g., Transcript of Oral Argument ("OA Tr."), dated Jan. 13, 2021 [dkt. no. 59] at 33:1-4 ("I don't have the case in front of me, but I do know that as a matter of black letter law, the statements have to be made in furtherance of a common interest, not simply the fact that a common interest exists . . . .").) But Plaintiff cites no case that purports to establish such a requirement, and the Court is aware of none. The common interest "privilege encompasses a defamatory communication on any subject matter in which the party communicating has an interest made to a person having a corresponding interest." Chandok, 632 F.3d at 815 (quotation marks and ellipsis omitted). Nothing more is required.

of truthfulness and are insufficient to overcome the common interest privilege." Fuji Photo Film U.S.A., Inc. v. McNulty, 669 F. Supp. 2d 405, 416 (S.D.N.Y. 2009). Even so, to the extent that Plaintiff suggests that IQVIA acted with "malicious motives," (Pl. Opp. to IQVIA at 17.), that malice is alleged to have been targeted, at least in part, at Obvio.[22] Plaintiff's allegations regarding possible malice against Obvio do not help her overcome the privilege. See Konikoff, 234 F.3d at 99 (noting that common-law malice "focuses on the defendant's attitude toward the plaintiff"). To the contrary, Plaintiff's allegation that the IQVIA employees made their statements to undermine Obvio's business interests means that, definitionally, those statements were not uttered for the sole purpose of harming Plaintiff. See Out of Box, 866 N.Y.S.2d at 680.

As for actual malice, Plaintiff's claims fare no better because her allegations are premised entirely "upon surmise, conjecture, and suspicion," which "are insufficient to defeat the claim of qualified privilege." Thai, 726 F. Supp. 2d at 330. That is clearest as to Mr. Tharmaratnam and Ms. Shpangental, to whom Plaintiff attempts to impute knowledge

[22] (See, e.g., Am. Compl. ¶ 132 ("It therefore appears that the defamatory statements made by IQVIA employees were, at least in part, a result of their knowledge that Ms. Hillel had the capability to execute a number of these deals in the provided timeframe, which they wanted to prevent. These actions are in direct contrast to the business interests of ObvioHealth.").)

based solely on their job titles and longevity with IQVIA.[23]  But nowhere does Plaintiff allege that she knew either person or ever spoke with them, much less met or worked with them.[24]  As for Mr. Pitale, Plaintiff alleges that he has "known [her] for decades" and had "worked with her at IMS/Quintiles for years," (Am. Compl. ¶ 126), but those facts have nothing to do with whether Mr. Pitale knew that his statement--i.e., that Mr. Grenfell and Ms. Shpangental had made their statements--was false.[25]  Finally, although Plaintiff does allege that Mr. Grenfell knew of Plaintiff's "exemplary performance and her positive relationships with IQVIA employees and clients," (Am.

---

[23] (See Am. Compl. ¶ 108 ("At the time of this incident, Mr. Tharmaratnam had been an employee of IMS/Quintiles/IQVIA for 23 years and was employed by them at the time of Ms. Hillel's resignation from IMS.  As a senior level employee of IQVIA, Mr. Tharmaratnam would have direct knowledge that his statement was false."); id. ¶ 120 ("Ms. Shpangental, as an employee of IQVIA and Ms. Hillel's direct successor, had direct knowledge of Ms. Hillel's exemplary performance, success in growing IMS and Quintiles, and her positive relationships with IQVIA employees and clients.").)

[24] Indeed, as for Ms. Shpangental, Plaintiff admitted that she "had . . . never met" her and that "they did not even work at IMS at the same time."  (Id. ¶ 119.)

[25] Plaintiff even characterizes her claim premised on Mr. Pitale's statement as depending on whether Mr. Grenfell and Ms. Shpangental actually made their statements.  (See Pl. Opp. to IQVIA at 18 ("If Defendants Grenfell and Shpangental did state that they would not work with Ms. Hillel then Defendant Pitale's statement would be objectively true (and ultimately he would prevail on the claim against him), but it still would not constitute an opinion.").)

Compl. ¶ 123), the Court finds those allegations insufficient to infer that Mr. Grenfell was "highly aware that [his statement] was probably false." Chandok, 632 F.3d at 815 (quoting Liberman, 605 N.E.2d at 350).[26]

---

[26] The Court also observes that even if the privilege did not apply, Mr. Grenfell's and Ms. Shpangental's statements are not actionable because those statements convey opinions, not facts. Similarly, because Mr. Pitale's statement simply repeated those opinions, it is also non-actionable.

New York courts consider three factors when evaluating whether a statement is a non-actionable opinion:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact.

Davis v. Boeheim, 22 N.E.3d 999, 1005 (N.Y. 2014).

The first two factors cut decidedly in favor of Mr. Grenfell's and Ms. Shpangental's statements--i.e., "that they would not work with Ms. Hillel," (Pl. Opp. to IQVIA at 18)--being opinions. Although the language used is not identified with precision, the statements appear to be phrased in general terms using words that are not subject to a definitive meaning. By that same token, the statements cannot be objectively proven true or false because they are, at least in some sense, premised on subjective personal feelings. See, e.g., Colantonio v. Mercy Med. Ctr., 901 N.Y.S.2d 370, 374 (2d Dep't 2010) (holding that statements "that the plaintiff 'has poor judgment,' is 'bizarre,' is 'inappropriate' and 'doesn't listen,' and that '[the defendants] can't work with him'" were opinions).

The full context surrounding the statements does not alter that calculus. Both statements--neither of which appears to have been heard by an Obvio employee--were allegedly made in December 2019, several months after Mr. Tharmaratnam told two Obvio employees that Plaintiff had been fired. (Am. Compl.

(continued on following page)

In sum, from the face of the complaint, the allegedly defamatory statements are subject to New York's common interest privilege, and Plaintiff has failed to plead sufficient facts to defeat the privilege. Accordingly, Plaintiff's defamation claims against IQVIA are dismissed.

**2. Tortious Interference**

Plaintiff maintains that the allegations in the Amended Complaint satisfy each of the required elements of her cause of action for tortious interference with prospective business relations. (See Pl. Opp. to IQVIA at 19-20.) The Court disagrees. The tort's third element--that the "defendant acted solely out of malice, or used dishonest, unfair, or improper means"--poses the problem. Kirch, 449 F.3d at 400.

As discussed above, Plaintiff has failed to allege facts that plausibly suggest that IQVIA or its employees acted solely out of malice. Alternatively, Plaintiff relies only on the supposedly defamatory statements to constitute the required "dishonest, unfair, or improper means." But those statements--

---

(continued from previous page)
¶¶ 106, 114.) Even though the statements were uttered contemporaneously with the IQVIA-Obvio deal's closing, (see id. ¶ 129), that is not enough to signal to a "reasonable listener" that Mr. Grenfell or Ms. Shpangental was conveying or implying facts. 600 W. 115th St. Corp. v. Von Gutfeld, 603 N.E.2d 930, 934 (N.Y. 1992). Plaintiff's attempt to characterize the statements as actionable "mixed opinions" is unavailing. (See Pl. Opp. to IQVIA at 18-19.)

which the Court has already concluded cannot support a claim for defamation--are a far cry from the "crime" or "independent tort" that is generally necessary for liability to flow. Carvel Corp., 818 N.E.2d at 1103. Because Plaintiff has failed to offer any other explanation for how that conduct is unlawful, the Court finds that those statements are "insufficiently culpable to create liability." Id. (quotation marks omitted).

In short, as her counsel conceded at oral argument, Plaintiff has tethered the fate of her tortious interference claim to that of her claims for defamation. (See OA Tr. at 33:14-17 (answering in the affirmative when asked if "the tortious interference claims rise and fall with the defamation claims").) And because Plaintiff's tortious interference claim "extend[s] no further than the claims (which the Court has already found wanting) for defamation," the tortious interference claim "must [also] be dismissed." Medcalf v. Walsh, 938 F. Supp. 2d 478, 490-91 (S.D.N.Y. 2013).

**3. Leave to Amend**

Down to her last strike, Plaintiff maintains that she should be given leave to amend her complaint a second time. (See Pl. Opp. to IQVIA at 20-21.) Not so. Leave to amend should be freely given "when justice so requires," FED. R. CIV. P. 15(a)(2), but leave "need not be granted when amendment would be futile," Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003).

"Amendment to a pleading is futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Long v. Perry, 679 F. App'x 60, 63 (2d Cir. 2017) (summary order).

The Court finds that giving leave to amend would be futile here. Plaintiff has not proposed any amendments to the Amended Complaint, let alone ones that would survive another motion to dismiss. Moreover, Plaintiff already received one opportunity to amend, which allowed her to address the arguments raised by IQVIA in its original motion to dismiss, many of which track closely the contentions IQVIA now mobilizes to dismiss the Amendment Complaint. (Compare IQVIA Br. at 7-18, with IQVIA Original MTD at 6-15.) But based on the discussion above, Plaintiff failed "to cure [those] prior deficiencies." Chunn v. Amtrak, 916 F.3d 204, 208 (2d Cir. 2019). Plaintiff's unsupported contention that it would not be "in line with the spirit of the law" to deny her leave to amend is unavailing.

At base, because "granting leave to amend is unlikely to be productive," the Court declines to afford Plaintiff such leave. Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002). And because the claims against IQVIA and the Individual Defamation Defendants will be dismissed, it is unnecessary to address IQVIA's alternative request to strike.

## IV. Conclusion

For the foregoing reasons, the motions to dismiss [dkt. nos. 31, 34] are GRANTED. IQVIA's alternative request to strike portions of the Amended Complaint is DENIED as moot. As to the Individual Defamation Defendants, the Amended Complaint's Eighth, Ninth, and Tenth Causes of Action are dismissed without prejudice for want of jurisdiction. As to IQVIA, the Amended Complaint's Eighth, Ninth, and Tenth Causes of Action are dismissed with prejudice. The Clerk of the Court shall close the open motions.

Because the motions to dismiss have been resolved, the stay of discovery [dkt. no. 57] is LIFTED. By no later than February 15, 2021, the remaining parties shall confer and propose, by letter, a schedule for proceeding with discovery.

**SO ORDERED.**

Dated: January 21, 2021
New York, New York

Loretta A. Preska

LORETTA A. PRESKA
Senior United States District Judge